**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MIAMI VALLEY FAIR HOUSING CENTER, INC.** | : | |
| **505 Riverside Drive** | : | **Judge:** |
| **Dayton, OH 45405** | | **Case No.:** |
| | : | |
| **and** | | |
| | : | |
| **ELIZABETH NAPIER** | | |
| **38 Elm Street** | : | |
| **West Alexandria, OH 45381** | | |
| | : | |
| **and** | | |
| | : | |
| **ADAM NAPIER** | | |
| **38 Elm Street** | : | |
| **West Alexandria, OH 45381** | | |
| | : | |
| **Plaintiffs,** | | |
| | : | |
| **v.** | | |
| | : | |
| **WEST ALEX VILLAGE, LLC dba** | | |
| **WEST ALEX VILLAGE APARTMENTS** | : | |
| **c/o REGISTERED AGENT** | | |
| **SOLUTIONS, INC.** | : | |
| **4568 Mayfield Road, Suite 204** | | |
| **Cleveland, Ohio 44121** | : | |
| | | |
| **and** | : | |
| | | |
| **WALLICK PROPERTIES MIDWEST** | : | |
| **LLC, dba WALLICK COMMUNITIES** | | **COMPLAINT FOR VIOLATIONS** |
| **c/o REGISTERED AGENT** | : | **OF THE FAIR HOUSING ACT** |
| **SOLUTIONS, INC.** | | |
| **4568 Mayfield Road, Suite 204** | : | **JURY TRIAL DEMANDED** |
| **Cleveland, Ohio 44121** | | |
| | : | |
| **Defendants.** | | |
| | : | |
| | | |
| | : | |

1

Now come Plaintiffs, Miami Valley Fair Housing Center, Inc. ("MVFHC"), Elizabeth Napier ("Plaintiff" or "Mrs. Napier"), and Adam Napier ("Plaintiff" or "Mr. Napier"), (collectively referred to as "Plaintiffs"), by and through the undersigned counsel, and hereby state for their Complaint the following:

## INTRODUCTION

1. Plaintiffs bring this action for declaratory, injunctive, and monetary relief against West Alex Village Apartments and Wallick Properties Midwest LLC dba Wallick Communities for discrimination on the basis of disability in violation of the Federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601.01, *et seq.*, the Federal Fair Housing Amendments Act of 1988 ("FHAA" or "FHA"), and the Fair Housing Laws of the State of Ohio, Ohio Rev. Code § 4112.01, *et seq.*, (collectively the "Fair Housing Laws").

2. Under the Fair Housing Laws, housing providers shall not discriminate because of disability, among other protected characteristics.

3. Disability discrimination occurs when a housing provider treats someone differently because they have a disability, or by denying the reasonable accommodation or reasonable modification requests of a disabled tenant.

4. The present action originates from Defendants' noncompliance with the Fair Housing Laws pursuant to requests for reasonable accommodations for reserved parking spaces and for emotional support animals ("ESA").

5. Defendants' housing policies and practices impose different standards on tenants with ESAs and on tenants with disabilities, denying said tenants the full opportunity to use and enjoy the rental property in the same manner as tenants without ESAs or disabilities.

6. Defendants' imposition of different standards on the Napiers, and on tenants with ESAs or disabilities in general, is in violation of the Fair Housing Laws.

7. An assistance animal or ESA is an animal that works, aids, or performs tasks for the benefit of a person with a disability, or that provides emotional support that alleviates one or more identified effects of a person's disability.

8. Assistance animals and ESAs are not pets.

9. The FHA requires a housing provider to allow a reasonable accommodation involving an assistance animal or ESA in situations where the request was made to the housing provider by or for a person with disability; and the request was supported by reliable disability-related information.

10. Defendants discriminated against Plaintiffs, and tenants with ESAs and disabilities in general, by ordering tenants to re-submit previously approved reasonable accommodations for ESAs, and to remove their ESAs from their rental units until after Defendants had completed the review and approval process of the resubmitted, previously approved reasonable accommodations.

11. Defendants housing policies and practices further imposed different standards on tenants with mobility-related disabilities, such as Plaintiff Adam Napier, by revoking previously accepted reasonable accommodations for reserved parking spaces and imposing stringent and overly restrictive conditions on the reinstatement of said reserved parking spaces.

12. Defendants discriminated against Plaintiffs by unreasonably revoking Plaintiffs' previously accepted reasonable accommodation for reserved parking spaces and by then requiring Plaintiffs to meet unnecessarily stringent and overly restrictive conditions in order to have

3

their reserved parking spaces reinstated with no guarantees for temporary accommodations while the request was being evaluated.

13. The Ohio Civil Rights Commission (the "Commission") conducted a thorough investigation and determined it was probable that Defendants engaged in an unlawful discriminatory practice on the basis of disability in violation of Ohio Rev. Code § 4112.

14. Defendants engaged in violations of the federal Fair Housing Act, 42 U.S.C. § 3601.01, *et seq.*, and Ohio Fair Housing Act, Ohio Rev. Code § 4112.01, *et. seq.*, by imposing different terms and conditions on tenants with ESAs and disabilities; and by failing to grant reasonable accommodations.

15. Defendants' actions, policies, and practices, as described herein, violate the Fair Housing Laws, 42 U.S.C. 3601.01, *et seq.*; and Ohio Rev. Code § 4112.02(H), *et seq.*

**PARTIES**

16. Plaintiff, Miami Valley Fair Housing Center, Inc., is a private, non-profit corporation, organized under the laws of the State of Ohio. The mission of MVFHC is to eliminate housing discrimination and ensure equal housing opportunities for all people in our region, the State of Ohio, and nationally. MVFHC investigates housing providers when complaints are made and conducts housing discrimination testing to ensure that housing providers are meeting the requirements of all federal, states, and local fair housing laws.

17. MVFHC routinely advocates on behalf of clients when housing providers violate the Fair Housing Laws; provides training and education to housing providers to avoid discrimination; and conducts investigations, including testing, to ensure civil rights laws are being followed in housing accommodations, services, and transactions. MVFHC

4

provides education to consumers on fair housing protections and provides housing-related referrals.

18. Plaintiffs, Elizabeth Napier and Adam Napier, a married couple, are residents of Preble, County, Ohio.

19. Plaintiff Adam Napier is protected from discrimination on the basis of disability as Plaintiff Adam Napier has a disability and utilizes an ESA. Plaintiff, Adam Napier, has a disability that limits his mobility, requiring him to live in an accessible unit with reserved parking spaces.

20. Plaintiff Adam Napier's disability affects his mobility, making it difficult for him to walk for extended periods of time.

21. Plaintiff Elizabeth Napier is protected from discrimination on the basis of a disability as Plaintiff Elizabeth Napier has a disability and utilizes an ESA to fully use and enjoy her unit.

22. Defendant, West Alex Village, LLC is a domestic limited liability company that does business under the name West Alex Village Apartments. At all times herein, West Alex Village, LLC owns the West Alex Village Apartments complex located at 20 Elm Street, West Alexandria, Ohio 45381, where it maintains its principal place of business.

23. Defendant, Wallick Properties Midwest LLC is a domestic limited liability company that does business under the name Wallick Communities. Wallick Properties Midwest LLC maintains its principal place of business at 160 West Main Street, New Albany, Ohio 43054. At all times herein, Wallick Properties Midwest LLC managed the West Alex Village Apartments located at 20 Elm Street, West Alexandria, Ohio 45381.

24. At all times herein beginning on August 10, 2023, Wallick Properties Midwest LLC's employee Rachel Maxey acted as the property manager at the West Alex Village Apartments.

25. In acting or omitting to act as alleged herein, each Defendant acted through its employees, officers, and/or agents and is liable on the basis of the acts and omissions of its employees, officers, and/or agents.

26. In acting or omitting to act as alleged herein, each employee, officer, or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent was subsequently ratified and adopted by one or more Defendants as principal.

27. Defendants are directly liable for the discriminatory housing practices of their employees, officers, and/or agents.

## JURISDICTION AND VENUE

28. Jurisdiction is appropriate in that this civil action is brought under the Federal Fair Housing Act ("FHA") and Federal Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § § 3601.01, *et seq.*

29. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the complaint raises important federal questions under the FHA and FHAA.

30. This Court has supplemental jurisdiction over related state law claims, Ohio Rev. Code § 4112.01, *et seq.* (the "Ohio Fair Housing Act"), and negligence, under 28 U.S.C. § 1367.

31. Defendants are subject to the jurisdiction of this Court as they are a "Person" under the Fair Housing Laws, and the acts described herein primarily occurred in Preble County, Ohio.

32. Defendants conduct business across Ohio, including but not limited to: owning property, managing property, leasing property, and performing contractual obligations in Ohio.

33. Venue is proper in this Court in that the discriminatory acts occurred primarily in Preble County, Ohio. The rental property at issue is also located in West Alexandria, Preble County, Ohio.

34. Wherefore, Plaintiff respectfully requests that this honorable Court take jurisdiction of this Complaint and award such relief as is appropriate under the federal and state Fair Housing Laws.

**FACTS**

35. Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 34 as if fully restate here.

36. In 2020, the Napiers, who are both disabled, leased 38 Elm Street, West Alexandria, Ohio 45381, an accessible rental property at the West Alex Village Apartments.

37. In 2020, Plaintiffs provided the staff at West Alex Village Apartments with verification of their disabilities and their need for emotional support animals. Nothing in that verification referenced that the disabilities were temporary in nature.

38. In 2020, West Alex Village Apartments granted Plaintiffs' reasonable accommodation requests, allowing Plaintiffs to keep two emotional support animals, a cat and a dog, as well as reserving two accessible parking spaces for Plaintiffs. West Alex Village Apartments further moved Plaintiffs into an accessible unit.

39. On August 10, 2023, residents at the West Alex Village Apartments, including Plaintiffs, received a notice from Defendants' new property manager, Rachel Maxey, informing them

that pets were no longer allowed in any of the rental units and that assigned parking spaces were no longer permitted on the property.

40. Under the new policies of Defendants, tenants who had previously approved reasonable accommodations in place, like Plaintiffs, were told by Defendants' staff that they would need to re-submit their reasonable accommodation requests and that their previously approved animals would need to be removed from the property until after Defendants had reviewed and approved the resubmitted requests.

41. The rationale given by Defendants for requiring this reauthorization process had nothing to do with actions taken by Plaintiffs or any other tenants. Instead, Defendants stated that the previous paperwork on approved reasonable accommodations had been lost or had gone missing from Defendants' files.

42. Additionally, Defendants informed tenants, including Plaintiffs, that Defendants would not be accepting any third-party verification statements for the re-submitted reasonable accommodation requests but that tenants would instead be required to have a doctor directly respond to Defendants using Defendants' disability verification form via fax. Such a policy is overly restrictive and intended to dissuade disabled tenants from applying or requesting accommodations.

43. Defendants further warned the Napiers and other tenants that if they failed to remove their emotional support or assistance animals before reapproval, then they would be issued a 30-day notice to vacate.

44. On August 16, 2023, MVFHC contacted Defendants via mail and email to inform them that previously granted reasonable accommodations could not be revoked based on Defendants' failure to maintain their records.

45. In this letter, MVFHC also informed Defendants that requiring tenants, including Plaintiffs, to remove their emotional support or assistance animals pending Defendants reapproval process, as well as requiring a doctor to verify a tenant's disability by and through a specific method prior to granting any reasonable accommodations, were violations of the Fair Housing Laws.

46. MVFHC never received any response from Defendants regarding this August 16, 2023 correspondence.

47. On August 17, 2023, Defendants inspected Plaintiffs' rental unit in retaliation for MVFHC submitting a reasonable accommodation request to Defendants.

48. During said inspection, the Napiers explained to Defendants that they previously provided verification and offered a more recent doctor statement for the ESA.

49. However, Defendants told Plaintiffs that only new forms, specifically selected by Defendants, would be accepted and considered.

50. Despite having both of their vehicles parked in their reserved spots, previously approved since 2020, one of Plaintiffs vehicles was tagged for removal, forcing Plaintiffs to pay for a tow truck to tow the vehicle to a property belonging to one of their relatives.

51. Defendants tagged Plaintiffs' vehicle for removal despite the fact that said vehicle did not have any flat tires, while several other vehicles on the property that were visibly not working, with flat tires and extensive buildup of debris, were allowed to remain.

52. Furthermore, vehicles that were tagged for removal by Defendants after Plaintiffs' vehicle were given additional time to remove their vehicles from the property.

53. Immediately after Defendants' August 10, 2023 letter stating that there were no longer any reserved parking spaces, Plaintiffs began having difficulty accessing those parking spaces

and were forced to park at inaccessible distances from their rental unit, causing Plaintiff Adam Napier extreme hardship in accessing his rental unit due to Plaintiff Adam Napier's mobility issues related to his disabilities.

54. Despite incurring additional fees, Plaintiffs completed the new verification forms which Defendants insisted must be filled out for reconsideration of Plaintiffs' previously approved reasonable accommodations. Defendants repeatedly stressed that the accommodations may not be approved after providing the updated verification, which resulted in added stress and anxiety for the Napiers.

55. On September 5, 2023, Plaintiffs completed these forms and returned them to Defendants, at which time Defendants claimed they were going to fax said documents to Plaintiff's doctor.

56. On September 19, 2023, Plaintiffs inquired into the status of the reverification forms and Defendants informed Plaintiffs that they had not yet been sent due to Defendants having a broken fax machine.

57. By September 26, 2023, Plaintiffs reached out to MVFHC to let MVFHC know that Plaintiffs had signed off on the reverification paperwork in Defendants office a few weeks prior.

58. However, Plaintiffs' doctors had yet to receive the reverification forms from Defendants by September 26, 2023.

59. While Defendants promised Plaintiffs that the forms would be faxed to Plaintiffs' doctor immediately, Defendants also told Plaintiffs that their previously approved reserved parking spaces would not be reinstated until said forms had been completed, returned, and reviewed by Defendants' compliance department for possible approved.

60. By September 26, 2023, Plaintiffs became concerned with the delay in the reverification process when they learned that Defendants had still not faxed their reverification forms to Plaintiffs' doctor, despite Plaintiffs completing their portion of the forms 3 weeks earlier.

61. Plaintiffs then requested that MVFHC advocate on their behalf with Defendants in an attempt to get their reasonable accommodations reinstated.

62. On September 28, 2023 at around 4:01pm, MVFHC emailed a letter to Defendant Wallick Communities requesting that Plaintiffs' reserved parking spaces be reinstated.

63. Approximately 10 minutes later, Plaintiffs received a notice of lease violation on their door which alleged that Plaintiff Elizabeth Napier had committed a verbal assault against Defendants' property manager, Rachel Maxey, a few days prior. The Napiers and MVFHC reviewed this allegation and determined Plaintiff Napier did not even have an interaction with Ms. Maxey on the date in question.

64. Plaintiffs deny that any such verbal assault occurred and instead attribute the notice of lease violation to Defendants retaliating against Plaintiffs for asserting their rights under the Fair Housing Laws.

65. On October 4, 2023, Plaintiffs' doctor informed them that the reverification forms had been received, filled out, and sent back to Defendants.

66. On October 13, 2023, Plaintiffs asked Defendants to confirm the receipt of their reverification forms from Plaintiffs' doctor. However, Defendants did not respond to Plaintiffs inquiry for several days, at which time Defendants stated that they had not yet sent the forms to Defendants' corporate office for review.

11

67. Shortly after this interaction, Defendants charged Plaintiffs an unexplained fee, allegedly for utility recoupment. This was another act of harassment and retaliation as a result of the Napiers contacting MVFHC and requesting a reasonable accommodation.

68. On November 1, 2023, Defendants told Plaintiffs that they needed to sign additional agreements for their emotional support animals.

69. On November 2, 2023, Defendants demanded that Plaintiffs provide them with proof of an up-to-date handicap placard.

70. On November 6, 2023, Defendants finally approved Plaintiffs request for the reinstatement of their emotional support animals, but Defendants denied Plaintiffs' request to have their reserved parking spaces reinstated.

71. Defendants' rationale for denying Plaintiffs' reasonable accommodation request for the reserved parking spaces was that Plaintiffs had an expired handicap parking placard.

72. On November 9, 2023, MVFHC contacted Defendants to explain that a reserved parking space is not the equivalent of a handicap parking space and that an up-to-date handicap placard is not a prerequisite or requirement for a reserved parking space.

73. Defendants never responded to MVFHC's communications of November 9, 2023. MVFHC followed up on November 14, 2023, but yet again, there was no response. Consequently, the denial of accommodations continued for several months.

74. On February 26, 2024, Plaintiffs filed two administrative complaints with the Ohio Civil Rights Commission (the "Commission"), alleging that Defendants violated the Fair Housing Laws on the basis of disability and MVFHC diverted their resources and had their mission frustrated.

75. Pursuant to 42 U.S.C. § 3613(a)(1)(B), the statute of limitations was stayed for the time during which Plaintiffs' administrative complaint was pending before the Commission.

76. The Commission conducted an extensive investigation into Defendants' housing policies, practices, and services related to the conduct described in this complaint.

77. The Commission determined it was PROBABLE that Defendants' actions, policies, and procedures violated Ohio Rev. Code § 4112.02 (the Ohio Fair Housing Act). Ther letters of determination are attached as Exhibit #1 (Napier) and Exhibit #2 (MVFHC).

78. Plaintiffs have not consented to any settlement or conciliation agreement with Defendants and the Commission. Therefore, Plaintiffs bring this action in federal court to enforce their right as authorized by the Fair Housing Laws.

**INJURY TO PLAINTIFFS**

79. As referenced herein, the Napiers, by and through MVFHC, requested the reinstatement of previously approved reasonable accommodations to Defendants' policies prohibiting animals and reserved parking spaces.

80. Such requests were reasonable, necessary and had already been approved and in place for years when Defendants revoked said reasonable accommodations and imposed overly stringent requirements on Plaintiffs' ability to reinstate said reasonable accommodations.

81. Plaintiffs and MVFHC requested the reinstatement of previously approved reasonable accommodations to Defendants' policies and procedures regarding emotional support animals and even resubmitted new forms per Defendants' request.

82. Plaintiffs utilize ESAs animals for emotional and social support, and wellbeing.

83. Defendants denied the previously approved reasonable accommodations related to reserved parking spaces and forced Plaintiffs to engage in a lengthy and overly restrictive

13

process of getting Plaintiff's previously approved reasonable accommodations regarding their ESAs reinstated.

84. During this re-evaluation process, the Napiers were deprived of their already granted accommodations.

85. As a result of this, Plaintiffs were denied equal housing opportunities based on their disability statuses.

86. The Napiers were subjected to differential treatment in the terms, conditions, privileges, and services as compared with non-disabled tenants, based on Plaintiffs inability to fully use and enjoy the rental property based on Defendants reasonable accommodation denials.

87. The Napiers experienced both harassment and retaliation when Defendants threatened them with 30-day notices to vacate, imposition of unwarranted fees, and a lengthy accommodations process all because they contacted MVFHC.

88. As a direct, proximate, and foreseeable result of Defendants' actions as described herein, the Napiers have suffered compensable economic and non-economic injuries.

89. As a direct, proximate, and foreseeable result of Defendant's actions as described herein, MVFHC has suffered, continues to suffer, and will in the future suffer substantial particularized, and concrete injuries.

90. Defendants' unlawful actions, conduct, policies, and practices have frustrated and impaired MVFHC's mission and purpose, forced them to drain their limited and scarce resources, and interfered with their ability to operate.

91. Defendants' conduct frustrated MVFHC's mission by interfering with their mission-related activities, impairing their ability to achieve their goals of ensuring equal and fair access to housing opportunities, and harming their community.

92. Defendants' discriminatory conduct forced and required MVFHC to engage in a bevy of activities to identify and counteract Defendants' unlawful conduct, policies, and practices, in order to protect tenants from unlawful housing discrimination on the basis of disability.

93. Plaintiffs' requests for the reinstatement of previously approved reasonable accommodations were clearly and unambiguously denied when Defendants attempted to justify the denial with irrelevant information about Plaintiffs' expired handicap placard and a broken fax machine.

94. Defendants' actions and policies as described herein restricted tenants with disabilities from fully using and enjoying the rental property and made housing otherwise unavailable to both current and prospective tenants with disabilities.

95. Defendants' actions as described herein limit the full use and enjoyment of the rental property, as well as limiting housing choices for persons with disabilities in violation of the Fair Housing Laws.

96. MVFHC investigated the disability-related issues at Defendants property following Defendants August 10, 2023 letter, which revoked previously approved reasonable accommodation requests for tenants with disabilities.

97. The investigations included research, advocating for and communicating with Defendants on behalf of the disabled tenants whose previously approved reasonable accommodation requests had been revoked, education and outreach, a direct mailer to other tenants, and extensive discussions with tenants of Defendants' property, Defendants, Plaintiffs and staff of MVFHC to resolve and ameliorate the discriminatory housing policies, practices, and services of Defendants.

98. MVFHC's diversion of time and resources to address Defendants' discriminatory conduct has forced MVFHC to suspend other projects that would have furthered its mission, including: conducting training sessions for race and sex discrimination, investigation of other housing providers, missed speaking engagements, delaying its publication of studies related to the Fair Housing Laws, and other testing-related activity.

99. MVFHC will continue to divert its scarce resources and have its mission frustrated until Defendants' discriminatory conduct ceases and the harm caused by Defendants to tenants and prospective tenants with disabilities are remedied and resolved.

## CAUSES OF ACTION

## COUNT I: VIOLATIONS OF THE FAIR HOUSING ACT OF 1968, as amended 42 U.S.C § 3601.01, *et. seq.* (Disability Discrimination)

100. Plaintiffs restate and reallege each and every allegation in Paragraphs 1 through 99 as if fully restated herein.

101. Plaintiffs' requests for the reinstatement of their previously approved reasonable accommodations for an ESA and for reserved parking spaces were reasonable accommodations under the FHA/FHAA and were reasonable and necessary.

102. Defendants' conduct as described in this Complaint constitutes a refusal to make reasonable accommodations in rules, policies, practices, or services when such an accommodation may be necessary to afford a person with disabilities an opportunity to use and enjoy a dwelling in violation of 42 U.S.C. § § 3604(f)(1); 3604(f)(2); and 3604(f)(3)(B).

103. Defendants' conduct as described in this Complaint constitutes discrimination in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services

or facilities in connection with such dwelling, because of the disability of a person residing in or intending to reside in a dwelling through the refusal to make reasonable accommodations, in violation of 42 U.S.C. § § 3604(f)(1); 3604(f)(2); and 3604(f)(3)(B).

104.     Defendants' conduct as described in this Complaint, including issuing a notice of lease violation to Plaintiffs, constituted retaliation and interference of Plaintiffs' fair housing rights after an administrative complaint of discrimination had been filed with the Commission, in violation of 42 U.S.C. § 3604 and 3617.

105.     Defendants' conduct as described in this Complaint constitutes discriminatory statements that indicate a preference, limitation, or discrimination based on disability in violation of 42 U.S.C. § 3604(c). As a direct and proximate result of Defendants' discriminatory conduct, Plaintiffs have suffered damages and are aggrieved persons, as defined in 42 U.S.C. § 3602(i).

106.     Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

**COUNT II: VIOLATIONS OF THE OHIO CIVIL RIGHTS ACT**

**OHIO REV. CODE § 4112.02(H), *et seq.* (Disability Discrimination)**

107.     Plaintiffs restate and reallege each and every allegation in Paragraphs 1 through 106 as if fully restated herein.

108.     Plaintiffs' requests for the reinstatement of their previously approved reasonable accommodations were reasonable and necessary.

109.     Defendants' conduct as described in this Complaint constitutes a refusal to make reasonable accommodations in rules, policies, practices, or services when necessary to

afford a person with disabilities an equal opportunity to use and enjoy a dwelling, in violation of Ohio Rev. Code § § 4112.02(H)(15) and 4112.02(H)(19).

110.     Defendants' conduct as described in this Complaint constitutes an unlawful refusal to rent or withholding a housing accommodation because of disability in violation of Ohio Rev. Code § § 4112.02(H)(1) and 4112.02(H)(4).

111.     Defendants' conduct as described in this Complaint, including issuing a notice of lease violation to Plaintiffs, constituted retaliation and interference of Plaintiffs' fair housing rights after an administrative complaint of discrimination had been filed with the Commission, in violation of Ohio Rev. Code § 4112.02(H).

112.     Defendants' conduct in this Complaint constitutes discriminatory statements that indicate any preference, limitation, specification, or discrimination based on disability with respect to a housing accommodation in violation of Ohio Revised Code § 4112.02(H)(7).

113.     As a result of Defendants' discriminatory conduct, Plaintiffs have suffered damages and are aggrieved persons, as defined in Ohio Rev. Code § 4112.051.

114.     Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT III – NEGLIGENCE

115.     Plaintiffs restate and reallege each and every allegation in Paragraphs 1 through 114 as if fully restated herein.

116.     Defendants owed a duty to the Napiers to train and supervise their leasing agents and to process the reasonable accommodation requests in good faith.

117.     Defendants breached that duty by failing to train and supervise Rachel Maxey on how to process reasonable accommodation requests.

118.     Defendants further breached that duty by requiring the Napiers' doctor to fax a reasonable accommodation request when they had no working fax machine.

119.     As a direct and proximate result of Defendants' actions as described herein, Plaintiffs suffered damages.

120.     Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, due to Defendant's discriminatory conduct and policies as described herein, Plaintiffs respectfully request that this Court grant judgment in its favor, and against Defendants as follows:

A.  Declaring that Defendants' actions violate the Federal Fair Housing Act, 42 U.S.C. § 3601.01, *et seq.* (the "Fair Housing Act"), and Ohio Rev. Code § 4112.02*, et seq*.;

B.  Permanently enjoining Defendants from engaging in the conduct described herein and directing Defendants to take all affirmative steps necessary to remedy the effects of the conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

C.  Awarding compensatory and punitive damages in an amount in excess of $25,000 together with costs and reasonable attorney fees pursuant to 42 U.S.C. § 3613(c);

D.  Mandate that the Defendants receive training in the requirements and procedures associated with reasonable accommodations and the Fair Housing Laws;

19

**E.** Mandate that the Defendants implement a fair housing policy compliant with the Fair Housing Act; and

**F.** Grant such additional legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues triable as of right.

Respectfully submitted,

*/s/ C. Jacob Davis*
_____
C. Jacob Davis (#0101745)
Damek Mitchell (#0105204)
Nalls Davis
33 White Allen Avenue
Dayton, Ohio 45405
Phone: (937) 813-3003
Fax: (937) 660-4400
Jacob.Davis@nallslaw.com
Damek.Mitchell@nallslaw.com
*Attorneys for Plaintiffs, The Miami Valley*
*Fair Housing Center, Inc., Elizabeth Napier,*
*and Adam Napier*

**Exhibit 1 – Napier Probable Cause Finding**

**Exhibit 2 – MVFHC Probable Cause Finding**

Case: 3:25-cv-00279-WHR-PBS Doc #: 1 Filed: 08/18/25 Page: 21 of 21  PAGEID #: 21

## CERTIFICATE OF SERVICE

I hereby certify that service of the Summons and Complaint is being made upon Defendants as required by the Federal Rules of Civil Procedure, via certified mail return receipt requested, waiver of service, or another form of proper service at the address listed in the caption of this Complaint.

Respectfully,

*/s/ C. Jacob Davis*

_____
C. Jacob Davis (#0101745)
*Attorney for Plaintiffs*